## Beckman's Estate.

*Brooks & Curtze*, for petitioner.

CLARK, P. J., Aug. 27, 1929.—John Beckman died, testate, April 10, 1929; he executed a will Nov. 21, 1927, named F. F. and F. A. Curtze executors, who

requested the Erie Trust Company to be appointed administrator *c. t. a.;* the widow, Belle Beckman, filed her renunciation to be appointed, and April 30, 1929, the Erie Trust Company was appointed administrator *c. t. a.*

Testator's will was very brief and did not contain any patent or latent ambiguities. After the usual recital of mental ability and the naming of executors, it contained this clause: "The said Executors to settle my entire estate in accordance with the Intestate Laws of the Commonwealth of Pennsylvania."

A petition was presented to the court May 13, 1929, signed by Belle Beckman. It recites that John Beckman died April 10, 1929; that he made a will; that he disposed of his estate according to the intestate laws; that he died without issue; that the petitioner is his widow; that letters of administration *c. t. a.* were granted to the Erie Trust Company; sets forth the names and addresses of those entitled to the estate; they are the widow, a brother, two sisters and several nephews and nieces.

The Act of June 7, 1917, § 2 *(a)*, P. L. 429, as amended by Act of July 11, 1917, P. L. 755, 756, is as follows:

"Section 2 *(a)*. Where such intestate shall leave a spouse surviving and other kindred, but no issue, the surviving spouse shall be entitled to the real or personal estate, or both, to the aggregate value of five thousand dollars; in addition, in the case of a widow, to the widow's exemption as allowed by law; and if such estate shall exceed in value the sum of five thousand dollars, the surviving spouse shall be entitled to the sum of five thousand dollars absolutely, to be chosen by him or her from real or personal estate, or both, and, in addition thereto, shall be entitled to one-half part of the remaining real and personal estate: Provided, that the provisions of this clause shall apply only to cases of actual intestacy of husband or wife, entire or partial, and not to cases where the surviving spouse shall elect to take against the will of the deceased spouse."

The Act of July 11, 1917, P. L. 755, adds to the Act of June 7, 1917, P. L. 429, after the word "clause" these words: "as to said five thousand dollar valuation."

In cases where the surviving spouse elects to take against the will, it has been decided that the special allowance of $5000 falls: Lucas's Estate, 277 Pa. 554; Langerwisch's Estate, 267 Pa. 319.

In the instant case, the testator disposes of his estate to the very persons and in the exact amounts prescribed by the intestate law, and, hence, it is contended that there is an actual intestacy.

The Acts of 1917, *supra*, relate to the descent of estates of persons dying intestate. John Beckman did not die intestate, but his disposal of his estate works a result as though he did.

Instead of embodying *verbatim et literatim* in his will the several provisions of the intestate law relative to the distribution of his estate, he, nevertheless, utilizes them and makes them the measure for the shares to each of the beneficiaries instead of fully and specifically setting forth the exact amount of interest each heir was to receive.

The testator intended his widow should receive the $5000; she has elected to take under the will.

The questions involved have been fully discussed and decided by the Supreme Court in an opinion of which the following is a part:

"The argument in support of appellant's contention, stated briefly, is that, inasmuch as the will makes the same distribution of the estate as would have

followed by virtue of the statute had the husband died intestate, it results that there is an actual intestacy and that the appellant is thus brought within the provisions of the act that awards to the widow of an intestate the sum of $5000. This proposition would call for consideration if a proper determination of the case in hand in any way depended on its correct determination, but it does not so depend. This is not a case of intestacy, and since the Act of 1917 relates solely to the descent and distribution of the real and personal property of persons dying intestate, it cannot have place in the discussion, except as by the will it measures the bounty given by the testator to the several beneficiaries thereunder. Here we have a will duly proved, unequivocal and unambiguous in its terms, so plain and intelligible in its several parts as to leave no room for controversy as to the testator's intention expressed therein, followed by the widow's election to take thereunder. It gives to the widow such interest in the estate as the intestate laws of the State direct; in other words, such interest as she would be entitled to receive in case he were to die intestate. Where a will is so free from uncertainty or ambiguity as this, it calls for no interpretation; it could not have been more direct had the provisions been followed by a recital or specification of the preferences given by law to the widow in cases of intestacy. The mere fact that it adopts the fixed measure of distribution which the law had adopted in cases of intestacy is without significance affecting in any way its exclusively controlling guidance. The Act of 1917 provides the method to be followed in setting apart to the widow of an intestate the $5000 in value of the property, but makes no provision for an ascertainment of value in cases where the claim is made under the will:" Carrell's Estate, 264 Pa. 143, 144.

The widow in this case elected to take under the will, "designated certain real and personal estate which she demanded should be set apart to her of the value of $5000," and prayed for the appointment of two appraisers.

In the opinion just cited, the court further, after referring to instances where appraisers were necessary, held: "But here the widow has no right of selection; she takes in money or not at all."

In holding that an appraisement was not necessary, the court rested its decision in part upon a provision of the will which effected a conversion of the estate into money and the distribution was to be exclusively as money, which does not require an appraisement.

The petition was dismissed by the court below and this action was affirmed by the Supreme Court, but "without prejudice to the right of appellant to enforce her claim by taking credit therefor in the settlement of her account as executrix and urging it upon final distribution."

The articles named in the petition before us and claimed by the widow bring the case within that class which necessitates appointments of appraisers.

If, then, the Supreme Court in the Carrell case, *supra*, preserved to the petitioner the right to enforce her claim on the final settlement of her account, it would seem to follow in the case before us that appraisers should be now appointed; that will not injure the petitioner and may strengthen her right.

The value of the property selected by the widow must be determined.

The court grants the prayer of the petitioner and will appoint the appraisers, who will file their appraisement subject to the approval, disapproval or modification of the court and also to objections by any interested party, both as to their appointment and their estimated valuation of the assets claimed by the petitioner.

From Otto Herbst, Erie, Pa.